**UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT**
No. 98-20215
USDC No. H:97-CV-1526
(Summary Calendar)

ANN S. MOSS,

                              Plaintiff-Appellant,

versus

KENNETH S. APFEL,
COMMISSIONER OF SOCIAL SECURITY,

                              Defendant-Appellee.

_____

Appeal from the United States District Court
For the Southern District of Texas
_____

February 12, 1999

Before EMILIO M. GARZA, DeMOSS, and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

Ann S. Moss appeals the district court's summary judgment ruling affirming the Commissioner's denial of her application for disability insurance benefits. We review a grant of summary judgment *de novo*, applying the same standard as the lower court. *See Brock v. Chater,* 84 F.3d 726, 727 (5th Cir. 1996). Our review is limited to whether the Commissioner applied the proper legal

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

standards, and whether the Commissioner's decision is supported by substantial evidence on the record. *See Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992). Moss argues that the Administrative Law Judge ("ALJ") applied an improper legal standard in evaluating her chronic fatigue syndrome ("CFS"), and that the ALJ's decision was not supported by substantial evidence.

Moss alleges that the ALJ applied an improper legal standard because the ALJ considered her subjective symptoms in accordance with 20 C.F.R. § 404.1529, instead of evaluating her symptoms in accordance with the Commissioner's policy regarding CFS. *See* Programs Operations Manual System § DI 24575.005 (1994). She argues that the ALJ's search for objective medical evidence led the ALJ to discredit her testimony as not supported by the record as a whole.

In order to obtain disability insurance benefits, Moss must prove the existence of a disabling impairment between her alleged onset date, January 1992, and the date last insured, March 31, 1992. *See* 20 C.F.R. § 404.320(b)(2). Moss must prove, therefore, that her CFS prevented her from working during this time period. Moss claims that Dr. Toll's medical record from April 6, 1994 indicates that Dr. Toll suspected that Moss had CFS. This mischaracterizes the medical record, which reveals that Moss visited the doctor complaining of CFS and the doctor refrained from making a diagnosis of CFS.[1] Moss claims that Dr. Harrison's

---

[1] The medical record of April 6 has the word "chronic fatigue" at the bottom, although it is impossible to tell whether this was the doctor's assessment and if so, whether the doctor thought that Moss had CFS before March

medical record from April 5, 1994 indicates that Dr. Harrison stated Moss had CFS for 1-1/2 years. First, the reference to CFS is again found in the patient's description of her medical condition. The record does not support any basis for Moss's belief, which she related to Dr. Harrison, that she had CFS for 1-1/2 years. Second, if Moss had CFS for 1-1/2 years before April, 1994, then the onset of CFS occurred around October, 1992, which is well after the date Moss was last insured. Moss claims that in October 1994 Dr. Pharo diagnosed Moss with CFS. Dr. Pharo's diagnosis does not suggest that Moss had CFS in 1992. Moss has failed to prove that CFS disabled her before the date she was last insured, and thus the ALJ did not err in considering her subjective symptoms under 20 C.F.R. § 404.1529.[2]

Moss argues that the ALJ's decision was not supported by substantial evidence. Moss contends first that the ALJ erred by adopting a diagnosis of hysterical neurosis and by rejecting a

_____

31, 1992. Accompanying these words were the words "daily marijuana use." The record indicates that as part of the patient's treatment "plan," the doctor told the patient to stop smoking drugs. The record also contains Dr. Toll's progress notes from a visit on June 6, in which she states that Moss "was seen approximately two months ago with complaints of CFS. Patient and boyfriend admitted to smoking marijuana daily for 10 years and was asked to get drug screen then and return clean [after] 30 days. Patient agreed to this." This confirms that Dr. Toll's reference to CFS in the April 6 medical record was at the suggestion of Moss. It also indicates that Toll did not diagnose Moss with CFS on April 6, and preferred to wait until Moss was drug-free to make a diagnosis.

[2] The cases cited by Moss are distinguishable because the patients sought treatment for the CFS symptoms during the time they were insured, and because their doctors believed later that CFS existed during the time the patients were insured. *See, e.g., Rose v. Shalala*, 34 F.3d 13 (1st Cir. 1994); *Sisco v. United States Dep't of HHS,* 10 F.3d 739 (10th Cir. 1993). The record shows that Moss did not seek treatment for any CFS symptoms prior to March 31, 1992, and there is no retrospective doctor opinion that Moss suffered from CFS during that time period.

diagnosis of CFS. There is substantial evidence in the record to reject a diagnosis of CFS, as explained above, and to support a diagnosis of hysterical neurosis. She contends second that the ALJ improperly rejected the diagnosis of Dr. Pharo. The ALJ did not err, because Dr. Pharo makes no opinion about Moss's condition in 1992. Moss contends third that the ALJ erred in relying on the testimony of the vocational expert, because the hypothetical posed to the expert did not include Moss's CFS. The ALJ found that Moss could perform past work, and thus vocation testimony was not necessary. *See Williams v. Califano*, 590 F.2d 1332, 1334 (5th Cir. 1980)(stating vocational testimony is not needed to find a claimant can perform past work). Thus, the sufficiency of the hypothetical posed to the vocational expert is irrelevant. Moss has not established that she was unable to perform her past relevant work. *See* 20 C.F.R. § 416.920.

Having reviewed the entire record, we find that the decision was supported by substantial evidence and the proper legal standards were used in evaluating the evidence. Accordingly, the judgment of the district court is AFFIRMED.